# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Steven Luckenbill, | No. CV-23-02462-PHX-SRB (DMF) |
| Petitioner, | |
| v. | **REPORT AND RECOMMENDATION** |
| Colette Peters, et al., | |
| Respondents. | |

**TO THE HONORABLE SUSAN R. BOLTON, SENIOR UNITED STATES DISTRICT JUDGE**:

This 28 U.S.C. § 2241 habeas matter is on referral to the undersigned for further proceedings and a report and recommendation pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure (Doc. 7 at 3).[1] Undersigned has carefully reviewed the entire record in this matter in light of the applicable law. As set forth below, this matter fails on the merits without the need for an evidentiary hearing on this sufficiently developed record.

## I.   THESE HABEAS PROCEEDINGS

In November 2023, Petitioner Steven Luckenbill ("Petitioner") filed a *pro se* petition initiating this 28 U.S.C. § 2241 habeas matter ("Petition") (Doc. 1). At the time of filing the Petition, Petitioner was confined in the Federal Correctional Institution-Phoenix ("FCI-Phoenix") (*Id.*). Petitioner is serving a 91-month term of imprisonment for

---

[1] Citation to the record as "Doc." indicates documents as displayed in the official Court electronic document filing system maintained by the District of Arizona under Case No. CV-23-02462-PHX-SRB (DMF).

possession with the intent to distribute methamphetamine in violation of the United States criminal code imposed by the United States District Court for the District of Colorado in November 2021 (Doc. 1 at 1-2; Doc. 5 at 10-12; Doc. 15-2 at 4-5, ¶ 17; Doc. 15-2 at 26-32).

On February 2, 2024, the Court dismissed the Petition without prejudice for Petitioner's failure to use a court-approved form, and the Court granted leave to file an amended petition within 30 days (Doc. 4). Petitioner timely filed an amended petition ("Amended Petition") (Doc. 5). The Amended Petition named the Director of the Bureau of Prisons as Respondent (*Id.* at 1). In the Amended Petition, Petitioner claims that the Bureau of Prisons ("BOP" or "Bureau") incorrectly calculated his sentence (*Id.* at 1-23). Petitioner argues that BOP failed to properly credit Petitioner pursuant to 18 U.S.C. § 3585 for the period from May 6, 2020, through November 2, 2021, when Petitioner asserts that he was housed in a federal facility in pretrial proceedings regarding federal criminal charges (*Id.*). Petitioner asserts that he exhausted available administrative remedies before filing these proceedings (*Id.* at 9).

On April 19, 2024, the Court substituted the unnamed Warden of FCI-Phoenix as Respondent and ordered Respondent to answer the Amended Petition (Doc. 7 at 1-3). The Court also ordered:

> Petitioner must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure. Petitioner must not include a motion for other relief with a notice of change of address. Failure to comply may result in dismissal of this action.

(*Id.* at 2).

On June 12, 2024, Respondent filed a timely Return and Answer to Amended Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241 ("Answer") (Doc. 15). In the Answer, Respondent argues that the Petitioner's claim should be dismissed as administratively unexhausted and that Petitioner's claim fails on the merits (*Id.*).

Petitioner timely replied in support of the Amended Petition (Doc. 19).

Upon review of the Amended Petition and briefing thereon (Docs. 5, 15, 19), the

- 2 -

Court set oral argument (Doc. 21). At and following oral argument, the Court ordered Respondent to supplement the record and allowed the parties additional written argument based on such (Docs. 22, 24, 26). Supplements were filed by Respondent and served on Petitioner (Docs. 23, 28, 29). Petitioner did not respond to the supplements.

## II.     EXHAUSTION BEFORE 28 U.S.C. § 2241 PETITION

### A.     Legal Framework

Federal inmates can pursue habeas corpus relief in two forms. A challenge to a federal prisoner's conviction or sentence can be raised via a motion to vacate, set aside, or correct the sentence pursuant to 28 U.S.C. § 2255. A habeas petition challenging the "manner, location, or conditions of a sentence's execution" must be brought pursuant to 28 U.S.C. § 2241. *Hernandez v. Campbell*, 204 F.3d 861, 864 (9th Cir. 2000). These proceedings were properly brought pursuant to 28 U.S.C. § 2241. Petitioner's claim regards the "manner, location, or conditions" of the execution of Petitioner's sentence of imprisonment for possession with the intent to distribute methamphetamine in violation of the United States criminal code imposed by the United States District Court for the District of Colorado (*see* Docs. 1, 5, 7, 15).

As a general matter, an inmate must exhaust available administrative remedies before filing a lawsuit. *Ward v. Chavez*, 678 F.3d 1042, 1045 (9th Cir. 2012). Nevertheless, administrative exhaustion is not statutorily required by 28 U.S.C. § 2241. *See Laing v. Ashcroft*, 370 F.3d 994, 997 (9th Cir. 2004) (citing *McKart v. United States*, 395 U.S. 185, 194 (1969)). However, courts generally require that administrative remedies be exhausted before 28 U.S.C. § 2241 proceedings because it is usually more efficient for the administrative process to go forward without interruption than to permit parties to seek aid from the courts at various intermediate stages. *Id.*; *see also McKart*, 395 U.S. at 194. As explained by the Ninth Circuit in *Laing*:

> Under the doctrine of exhaustion, "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed ... remedy has been exhausted." *McKart v. United States*, 395 U.S. 185, 193, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969) (citation and internal quotation marks omitted).

> Exhaustion can be either statutorily or judicially required. If exhaustion is required by statute, it may be mandatory and jurisdictional, but courts have discretion to waive a prudential requirement. *El Rescate Legal Servs., Inc. v. Executive Office of Immigration Review*, 959 F.2d 742, 746 (9th Cir.1991); *Stratman v. Watt*, 656 F.2d 1321, 1325–26 (9th Cir.1981).

370 F.3d at 997-98.

Courts may require prudential exhaustion if "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003) (quoting *Montes v. Thornburgh*, 919 F.2d 531, 537 (9th Cir. 1990)). Even when exhaustion is prudential and courts have discretion to waive the exhaustion requirement, a key consideration in exercising this discretion is whether waiving the exhaustion requirement encourages the inmate to bypass the administrative scheme. *Laing*, 370 F.3d at 1000.

When a petitioner does not exhaust administrative remedies and administrative remedies remain available, "a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies, unless exhaustion is excused." *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011). However, exhaustion may be excused if pursuing an administrative remedy would be futile. *Fraley v. U.S. Bureau of Prisons*, 1 F.3d 924, 925 (9th Cir. 1993); *see also Sun v. Ashcroft*, 370 F.3d 932, 943 (9th Cir. 2004) (reiterating that exhaustion is futile when the agency's position on the issue appears "already set" and is unlikely to change).

If a prisoner is unable to obtain an administrative remedy because of his failure to administratively appeal in a timely manner, then the petitioner has procedurally defaulted his habeas corpus claim. *See Nigro v. Sullivan*, 40 F.3d 990, 997 (9th Cir. 1994) (citing *Francis v. Rison*, 894 F.2d 353, 354 (9th Cir. 1990)); *Martinez v. Roberts*, 804 F.2d 570, 571 (9th Cir. 1986)). If a claim is procedurally defaulted, the court may require the petitioner to demonstrate cause for the procedural default and actual prejudice from the

alleged violation of law.  *See Francis*, 894 F.2d at 355 (suggesting that the cause and prejudice test is the appropriate test); *Murray v. Carrier*, 477 U.S. 478, 492 (1986) (applying cause and prejudice test to procedural defaults on appeal); *Hughes v. Idaho State Bd. of Corr.*, 800 F.2d 905, 906–08 (9th Cir. 1986) (applying cause and prejudice test to pro se litigants).

The BOP has an administrative remedy program for inmates who want to seek formal review of an issue relating to any aspect of confinement.  28 C.F.R. §§ 542.10 & 542.14(d)(2); *see also* Doc. 15-1 at 3-5, ¶¶ 3-9 (summary of Administrative Remedy Program).  The BOP's Administrative Remedy Program consists of four levels of review: an attempt at informal resolution initiated by form BP-8, a request to the Warden initiated by form BP-9, an appeal to the Regional Director initiated by form BP-10, and an appeal to the Office of General Counsel in the Central Office initiated by form BP-11 (Doc. 15-1 at 3, ¶ 4).  An inmate may not raise in an appeal an issue that was not raised in the lower levels.  *See* 28 C.F.R. § 542.15(b)(2).  The regulations permit the Administrative Remedy Coordinator at any level to reject and return to the inmate without response a request for administrative remedy or appeal that does not meet procedural requirements outlined in the Code of Federal Regulations.  *See* 28 C.F.R. § 542.17(a).  Nevertheless, the inmate shall be provided a written notice of rejection, signed by the Administrative Remedy Coordinator, explaining the reason for rejection.  *See* 28 C.F.R. § 542.17(b).  "If the defect on which the rejection is based is correctable, the notice shall inform the inmate of a reasonable time extension within which to correct the defect and resubmit the Request or Appeal."  28 C.F.R. § 542.17(b).

**B.    Analysis**

Respondent claims that Petitioner did not exhaust his administrative remedies before filing these proceedings because of procedural deficiencies in Petitioner's attempts to exhaust (Doc. 15 at 7; Doc. 15-1 at 6-7, ¶¶ 13-15).  Specifically, Respondent asserts that:

> Here, Petitioner never properly filed the final level of Administrative Remedies, to the Office of General Counsel (BP-11), prior to filing the

>   Amended Petition. (Ex. A [Doc. 15-1] at ¶¶ 12-14.) While he filed a BP-11, he did not wait for the response from the BP-10 before filing his BP-11, which is improper. (*Id.*)

(Doc. 15 at 7). Respondent requests that this Court dismiss these proceedings for failure to administratively exhaust (*Id.* at 8). However, Respondent's assertions about defects in Petitioner's administrative exhaustion are not entirely accurate or complete. Also, the record in this matter reflects that further attempts by Petitioner to exhaust his administrative remedies would be futile.

The April 29, 2024, declaration of a BOP employee Shaleen Ruelas ("Legal Assistant Ruelas") on which Respondent relies attaches the BOP's computer records regarding Petitioner's requests for BOP administrative remedies and responses thereto ("SENTRY Administrative Remedy Index") (Doc. 15-1 at 9-14). The Administrative Remedy number assigned to Petitioner's requests for administrative relief regarding the issue raised by the habeas claim in this matter is 1143936 (Doc. 15-1 at 4, ¶ 7; Doc. 15-1 at 5, ¶ 13). The SENTRY Administrative Remedy Index in Administrative Remedy number 1143936 reflects the BOP's denial of Petitioner's BP10 on April 10, 2023 (Doc. 15-1 at 14). Legal Assistant Ruelas's April 29, 2024, declaration implies that the documents in attachment 4 to the declaration are all of the BOP administrative remedy requests and responses for Administrative Remedy number 1143936 (Doc. 15-1 at 7 ("Att. 4, Remedy No. 1143936")). Nevertheless, Legal Assistant Ruelas's April 29, 2024, declaration does not reflect or account for the BOP's April 10, 2023, denial of the BP10 shown on the SENTRY Administrative Remedy Index submitted in support of the declaration (Doc. 15-1 at 6, ¶ 13; Doc. 15-1 at 7, 14, 27-34).

To his filings in this matter, Petitioner attached some of his requests for administrative relief and the BOP responses for Administrative Remedy number 1143936 (*see, e.g.*, Docs. 1, 5, 19). Included in the attachments to the Petition initiating this matter was the BOP's April 10, 2023, denial of Petitioner's BP10 in Administrative Remedy number 1143936 (Doc. 1-1 at 13).[2] While the April 10, 2023, BP10 denial was reflected

---

[2] The Court recognizes that an amended petition supersedes an original petition. *Ferdik v.*

- 6 -

the SENTRY Administrative Remedy Index, such BP10 denial was not included in Respondent's Answer materials (Doc. 15-1 at 7-34).

Consistent with the SENTRY Administrative Remedy Index reflecting the April 10, 2023, BP10 denial attached to Legal Assistant Ruelas's April 29, 2024, declaration, the April 10, 2023, denial in Administrative Remedy number 1143936 was substantive, not procedural (Doc. 15-1 at 14; Doc. 1-1 at 13). Further, the April 10, 2023, denial of the BP10 in Administrative Remedy number 1143936 stated that if Petitioner was dissatisfied with the BP10 decision, Petitioner must file an appeal to the Office of General Counsel in the Central Office, which is a BP11, "within 30 calendar days of the date of this response" (Doc. 1-1 at 13; Doc. 15-1 at 3, ¶ 4). *See* 28 C.F.R. § 542.15 ("An inmate who is not satisfied with the Regional Director's response may submit an Appeal on the appropriate form (BP–11) to the General Counsel within 30 calendar days of the date the Regional Director signed the response."). Petitioner's copy of the BP10 decision in Administrative Remedy number 1143936 reflects a received date of May 31, 2023, which is after the time for a BP11 submission had already passed (Doc. 1-1 at 13). While Petitioner could have sought permission to submit the BP11 outside of the timeframe for good cause, he was not required to wait and seek such relief. *See* 28 C.F.R. § 542.15 ("When the inmate demonstrates a valid reason for delay, these time limits may be extended."); 28 C.F.R. § 542.18 ("If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level.").

Indeed, the March 8, 2023, receipt for Petitioner's BP10 administrative appeal in Administrative Remedy number 1143936 states that Petitioner's BP10 was received on March 7, 2023, with response by BOP's Regional Director due on April 6, 2023 (Doc. 1-1

*Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992); *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1546 (9th Cir. 1989). Further, any ground for relief that was raised in the original petition is waived if it is note alleged in an amended petition. *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc). Nevertheless, Respondent's incomplete account and record submitted in support of Respondent's exhaustion argument require the Court to consider the attachments to the Petition, which were readily available to Respondent, to decide the exhaustion issue.

- 7 -

at 26; Doc. 5 at 19). *See* 28 C.F.R. § 542.18. On April 16, 2023, apparently having not received the BOP's April 10, 2023, response substantively denying his BP10, Petitioner submitted a BP11 in Administrative Remedy number 1143936 (Doc. 15-1 at 32; Doc. 19-1 at 3). The BP11 reflects it was signed by Petitioner on April 16, 2023, and received by the Office of General Counsel in the Central Office on May 4, 2023 (*Id.*). In the BP11, Petitioner states that the response to the BP10 was due on April 6, 2023, it was beyond that date, and Petitioner had not received a BP10 response (*Id.*).

The SENTRY Administrative Remedy Index reflects that Petitioner submitted a BP11 in Administrative Remedy number 1143936 on May 4, 2023 (Doc. 15-1 at 14), and that one of the reasons that the BP11 was rejected by the BOP on May 8, 2023, was because the "BP10 RESPONSE IS PENDING" (*Id.*). Yet, the BP10 response in Administrative Remedy number 1143936 was not pending on May 4, 2023, or on May 8, 2023; rather, the BP10 response substantively denying Petitioner's BP10 in in Administrative Remedy number 1143936 had already been issued on April 10, 2023 (Doc. 15-1 at 14; Doc. 1-1 at 13).

Citing 28 C.F.R. § 542.18, Petitioner argues that he did properly exhaust his administrative remedies with BOP, including to the Office of General Counsel in the Central Office in submitted his BP11 on April 16, 2023, such that it was received on May 4, 2023 (Doc. 19 at 3). 28 C.F.R. § 542.18 states:

> If accepted, a Request or Appeal is considered filed on the date it is logged into the Administrative Remedy Index as received. Once filed, response shall be made by the Warden or CCM within 20 calendar days; by the Regional Director within 30 calendar days; and by the General Counsel within 40 calendar days. If the Request is determined to be of an emergency nature which threatens the inmate's immediate health or welfare, the Warden shall respond not later than the third calendar day after filing. If the time period for response to a Request or Appeal is insufficient to make an appropriate decision, the time for response may be extended once by 20 days at the institution level, 30 days at the regional level, or 20 days at the Central Office level. Staff shall inform the inmate of this extension in writing. Staff shall respond in writing to all filed Requests or Appeals. If the inmate does not receive a response within the time allotted for reply, including extension, the

inmate may consider the absence of a response to be a denial at that level.

The Court concludes that the record in this matter reflects that at the very least, Petitioner made good faith and diligent attempts to exhaust his administrative remedies in compliance with the BOP's administrative remedy system. Arguably, Petitioner properly exhausted his BOP administrative remedies. In any event, the record reflects that the BOP was given a sufficient opportunity to administratively address Petitioner's claim at every administrative level. Waiver of the exhaustion requirement in these circumstances does not encourage Petitioner or other inmates to bypass the BOP's administrative scheme. Additionally, the course of the administrative remedy process as well as this litigation, procedurally and substantively, demonstrates that it would have been futile for Petitioner to make additional attempts to exhaust his administrative remedies at the highest level, to the BOP's Office of General Counsel in the Central Office, as Respondent claims Petitioner failed to do. The administrative process did not develop a sufficient record; rather, it took multiple orders from this Court for such record development.

For the reasons set forth above, it is recommended that Respondent's request that the Amended Petition be dismissed for failure to exhaust administrative remedies be rejected. Below, the merits of the claim in the Amended Petition will be addressed.

**III.  MERITS**

A habeas petition challenging the "manner, location, or conditions of a sentence's execution" must be brought pursuant to 28 U.S.C. § 2241. *Hernandez*, 204 F.3d at 864. Here, the claim alleged in these 28 U.S.C. § 2241 proceedings regards the "manner, location, or conditions" of the execution of Petitioner's sentence (Doc. 5). Although a district court has no jurisdiction over the BOP's discretionary designation decisions, it does have jurisdiction in 28 U.S.C. § 2241 proceedings to decide whether the Bureau of Prisons acted contrary to established federal law, violated the Constitution, or exceeded its statutory authority. *Compare Reeb v. Thomas*, 636 F.3d 1224, 1228 (9th Cir. 2011) (finding no jurisdiction to review BOP action absent an alleged violation of federal law), *with Close v. Thomas*, 653 F.3d 970, 973–74 (9th Cir. 2011) (allowing judicial review for

BOP action which allegedly exceeded its statutory authority).

Here, Petitioner claims that pursuant to the plain language of 18 U.S.C. § 3585, BOP should have applied credit towards Petitioner's sentence for the time that Petitioner asserts that he was housed in a federal facility during pretrial proceedings for federal criminal charges from May 6, 2020, through November 2, 2021 (Docs. 5, 19). Section 3585 of Title 18 of the United States Code governs calculation of a term of imprisonment imposed as a federal criminal sentence, including when a term of imprisonment commences. This section provides:

> **(a) Commencement of sentence.**--A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.
>
> **(b) Credit for prior custody.**--A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences--
>
>> **(1)** as a result of the offense for which the sentence was imposed; or
>>
>> **(2)** as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> that has not been credited against another sentence.

18 U.S.C. § 3585. Petitioner argues that as a matter of law it does not matter that he was serving a state sentence when he was transferred to a federal facility for pretrial proceedings pertaining to his federal case for which Petitioner is now serving the sentence (Doc. 19 at 1-3). In support of his arguments, Petitioner also asserts that a state of Colorado criminal case resentencing affected whether or not the time period from May 6, 2020, through November 2, 2021, was credited to his state of Colorado sentences (Doc. 5 at 10-14; *see also* Doc. 19 at 1-3). In addition, Petitioner argues that the state of Colorado judge ordered his state sentences to run concurrent to his federal sentence he is now serving, impacting

his federal sentence calculation (Doc. 5 at 12; Doc. 19 at 3). Nevertheless and despite any assertion by Petitioner to the contrary (Doc. 5 at 12-13), the United States District Judge imposed the federal sentence at issue to run consecutive to Petitioner's state sentences of imprisonment: "The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of: **ninety-one (91) months**, consecutive to any state sentence the defendant is currently serving" (Doc. 15-2 at 27).

In answering the Amended Petition, Respondent asserts that from June 5, 2020, through November 22, 2021, Petitioner was in federal custody pursuant to a writ of habeas corpus *ad prosequendum* (Doc. 15 at 3-4; Doc. 15-2 at 4-5, ¶¶ 16-18). In support, Respondent attaches the writ of habeas corpus *ad prosequendum*, which reflects a date of June 5, 2020 (Doc. 15-2 at 23-24). Regardless of the exact date Petitioner was transferred for his federal pretrial proceedings pursuant to the writ of habeas corpus *ad prosequendum*, Respondent argues that Petitioner remained in primary Colorado state custody during the period Petitioner was in federal custody pursuant to a writ of habeas corpus *ad prosequendum* and that such period cannot be applied as credit toward the current federal sentence Petitioner is serving (Doc. 15 at 8-10). Respondent accurately summarizes the applicable law:

> Federal law, specifically 18 U.S.C. § 3585(a)-(b), dictates the date on which a federal sentence commences and controls whether time spent in custody prior to the commencement date can be applied to the sentence. The Attorney General, through the Bureau, is responsible for computing the amount of prior custody credit an inmate is to receive toward his federal sentence. (*United States v. Wilson*, 503 U.S. 329, 333-35 (1992); *see also* 28 C.F.R. § 0.96 (authorizing the Director of the Bureau to exercise any authority of the Attorney General relating to the commitment, control, or treatment of persons charged with or convicted of offenses against the United States).) This sentence computation occurs once the defendant commences his federal sentence, rather than necessarily at the time of sentencing. (*Wilson*, 503 U.S. at 333.) Title 18 U.S.C. § 3585 controls the calculation of Petitioner's sentence in this case.
>
> Courts look to whether the state or federal government has "primary jurisdiction" over the offender to determine when an offender is "received"

> by the Attorney General for service of his sentence. Primary jurisdiction determines the priority of custody and service of sentence as between state and federal sovereigns. (*Taylor v. Reno*, 164 F.3d 440, 444 n.1 (9th Cir. 1998).)
>
> The sovereign which first arrests the offender has primary jurisdiction over the offender unless that sovereign relinquishes jurisdiction to another by releasing him from its custody "by, *e.g.*, bail release, dismissal of the state charges, parole release, or expiration of the sentence." *Chambers v. Holland*, 920 F. Supp. 618, 622 (M.D. Pa.), aff'd, 100 F.3d 946 (3d Cir. 1996). A transfer pursuant to a writ of habeas corpus *ad prosequendum* does not relinquish primary jurisdiction. (*Thomas v. Brewer*, 923 F.2d 1361, 1366-67 (9th Cir. 1991) (state authorities did not abandon primary jurisdiction when they transferred defendant to federal custody pursuant to a writ of habeas corpus *ad prosequendum*); *United States v. Evans*, 159 F.3d 908, 912 (4th Cir. 1998) (federal sentence does not begin to run when prisoner in state custody is produced for prosecution pursuant to a writ of habeas corpus *ad prosequendum*, as state retains primary jurisdiction over prisoner until prisoner satisfies state obligation).)

(Doc. 15 at 8-9).

Indeed, more recent Ninth Circuit caselaw than the caselaw cited by Respondent supports Respondent's position and argument. In *Johnson v. Gill*, 883 F.3d 756 (9th Cir. 2018), the Ninth Circuit held that where a defendant is transferred from one sovereign to another, primary jurisdiction has only shifted when the state with primary jurisdiction "intended to surrender its priority upon transfer," but not when the state has "merely transferred temporary control of the defendant to the federal government." *Id.* at 765; *see also Schleining v. Thomas*, 642 F.3d 1242, 1243 n.1 (9th Cir. 2011) ("[T]he temporary transfer of a prisoner from state prison to the BOP's custody for purposes of a federal prosecution does not interrupt his state custody."); *Reynolds v. Thomas*, 603 F.3d 1144, 1152 (9th Cir. 2010) (noting that a defendant's appearance before a federal court pursuant to a writ of *habeas corpus ad prosequendum* indicates that the state had primary jurisdiction), *abrogated on other grounds by Setser v. United States*, 566 U.S. 231 (2012).

Long established law remains in force and effect: the transfer of a defendant pursuant to a writ of habeas corpus *ad prosequendum* allows one sovereign to "loan" the

defendant to another sovereign for the purpose of prosecution. *Thomas*, 923 F.2d at 1367. A "loan" in this context indicates that the sending sovereign expected the receiving sovereign to return the defendant following that defendant's prosecution. *Id.* The nature of this transfer does not relinquish primary jurisdiction over the defendant, as it merely constitutes a transfer of "temporary control." *Johnson*, 883 F.3d at 765.

On this sufficiently developed record, Respondent is correct that Petitioner was in Colorado's primary jurisdiction from May 6, 2020, through November 2, 2021, despite Petitioner having been in federal temporary control pursuant to a writ of habeas corpus *ad prosequendum*, whether for all of that time period or beginning on June 5, 2020.[3] Petitioner's arguments that he was in federal primary custody from May 6, 2020, through November 2, 2021, fail (Doc. 5; Doc. 19 at 2-3).

Petitioner was released from Colorado state custody to United States Marshal custody on March 29, 2022 (Doc. 15-2 at 5, ¶ 19) to begin state of Colorado parole on March 30, 2022 (Doc. 19-1 at 1; Doc. 29-1 at 2-4). Respondent concedes that the BOP obtained exclusive custody of Petitioner on March 29, 2022 (Doc. 15 at 4-5; Doc. 15-2 at 5, ¶ 19). Regardless of which jurisdiction had primary custody from May 6, 2020, through November 2, 2021, Respondent also agrees with Petitioner that "any time Petitioner spent in official detention prior to March 29, 2022, may be applied to his sentence, as long as such time has not been applied to any other sentence" (*Id.* at 9). Nevertheless, the Court's careful review of the record in this matter, including the ordered supplements, satisfies the Court that Petitioner was credited for all of his official detention prior to March 29, 2022, to his Colorado state court sentences (Doc. 29-1 at 2-4; *see also* Doc. 5 at 18; Doc. 15-2 at 39). This is consistent with Respondent's position (Docs. 15, 23; *see also* Doc. 29).

Petitioner's state resentencing in April 2022 did not change this result (Doc. 29-1 at 2-4; *see also* Doc. 5 at 18; Doc. 15-2 at 39). The state of Colorado official time

---

[3] Respondents have provided reliable documentation that Petitioner was in federal temporary custody pursuant to a writ of habeas corpus *ad prosequendum* from June 5, 2020, through November 22, 2021 (Doc. 15-2 at 4-5, ¶¶ 16-18; Doc. 15-2 at 23-24), rather than the timeframe Petitioner asserts, which was from May 6, 2020, to November 2, 2021. In any event, the date range discrepancy does not affect the analysis or outcome.

computation report after Petitioner's state of Colorado resentencing reflects that after Petitioner's state resentencing in April 2022, Petitioner was still credited for state of Colorado incarceration sentences until March 30, 2022 (Doc. 29-1 at 2-4). Indeed, this comports with the sentences Petitioner received in state of Colorado cases which were not subject to the April 2022 resentencing (Doc. 29-1 at 2-4; *see also* Doc. 5 at 18; Doc. 15-2 at 3-5, 13-17, 39). Further, United States district court judges have the discretion to order sentences consecutive to sentences already imposed. *See Setser*, 566 U.S. at 236. A state judge's order that state sentences run concurrent to federal sentences does not override the federal court's order that a federal sentence be consecutively served. *See Taylor v. Sawyer*, 284 F.3d 1143, 1149 (9th Cir. 2002), *abrogated on other grounds by Setser*, 566 U.S. at 244. Thus, Petitioner's argument that his state of Colorado resentencing impacted time credits for Petitioner's federal sentence fails (Doc. 5 at 12; Doc. 19 at 3).

For the reasons set forth above, Petitioner's claim in the Amended Petition fails on the merits and the Amended Petition should be denied.

## IV.   CONCLUSION

The claim in the Amended Petition (Doc. 5) should proceed to the merits rather than be dismissed as administratively unexhausted. Nevertheless, the claim in the Amended Petition fails on the merits based on this sufficiently developed record. Thus, the Amended Petition should be denied without an evidentiary hearing, and this matter should be terminated.

Accordingly,

**IT IS RECOMMENDED** that Petitioner Steven Luckenbill's Amended Petition (Doc. 5) be denied and that the Clerk of Court be directed to terminate this matter.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of the District Court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See* 28

U.S.C. § 636(b)(1); Fed. R. Civ. P. 6, 72. The parties shall have fourteen days within which to file responses to any objections. Failure to file timely objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to file timely objections to any factual determination of the Magistrate Judge may be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See* Fed. R. Civ. P. 72. Also, LRCiv 7.2(e)(3) provides that "[u]nless otherwise permitted by the Court, an objection to a Report and Recommendation issued by a Magistrate Judge shall not exceed ten (10) pages."

Dated this 17th day of January, 2025.

_____
Honorable Deborah M. Fine
United States Magistrate Judge